790 A.2d 213 (2002)
347 N.J. Super. 393
Jean BENISCH, Plaintiff-Respondent,
v.
Stephen B. BENISCH, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 10, 2001.
Decided February 6, 2002.
Stephen B. Benisch, appellant pro se.
Jean Benisch, respondent pro se.
Before Judges CIANCIA, LESEMANN and PARRILLO.
The opinion of the court was delivered by LESEMANN, J.A.D.
In this bitterly contested matrimonial matter which involved twenty-four days of trial, the defendant husband, appeals from only one aspect of a lengthy, complex judgment: the award of $60 per week child support respecting the parties' sixteen year old son. The parties had stipulated that the court should apply the Child Support Guidelines set forth in Appendix IX of *214 the Court Rules, and defendant does not object to the court's use of those guidelines. Rather, he argues that the court misapplied them and, as properly applied, they should lead to an award of just $13 per week rather than $60 per week. We are not satisfied that defendant's number is correct, but we do believe the matter must be remanded to enable the court to explain its reasoning in applying the guidelines and, if necessary, modifying the award.
The parties were married in 1973. The plaintiff wife's complaint for divorce was filed on April 14, 1998, and the twenty-four day trial referred to began on October 20, 1999, and concluded on January 27, 2000. In a sixty-seven page written opinion, the court made extensive rulings respecting equitable distribution, custody, alimony and child support. The judgment embodying the findings and conclusions in the opinion encompassed nineteen pages and was entered on June 20, 2000.
The parties have two children, Bridget who was twenty at the time of the divorce, and Chip who was sixteen. Bridget was attending college and the court's ruling contained no provision respecting child support for Bridget.
Chip's custody was the subject of lengthy dispute at trial. Ultimately, the court accepted the recommendation of a court appointed psychologist and directed that Chip should live with his mother and his father for an equal number of days each year. During school months, he was to spend one week with one parent and then, on Friday evening, he would move to the other parent and spend the next week with that person. On vacations and during the summer, he would, again, spend the same number of days and nights with each parent.
Defendant is an attorney and his annual income was the subject of dispute at trial. Ultimately, the court concluded that his pre-tax net income was $100,000 per year, and the comparable figure for plaintiff was $60,000 per year. The court awarded plaintiff permanent alimony of $300 per week.
As noted, the parties had stipulated that child support should be computed according to the Child Support Guidelines. In its opinion, the court referred to those Guidelines and set out a summary of its calculations. It also attached to the opinion completed worksheets on which it set out the figures it employed in its calculations, showing how it arrived at its net calculation of $60 per week.
The court employed formulations based on what the Guidelines term "Shared Parenting Arrangements," (see Paragraph 14 to Appendix IX-A), which are designed for application when a child spends different amounts of time with each of his or her parents. They are premised on the fact that, "each parent incurs expenses for the child while the child is with that parent." See Paragraph 14a. In applying the shared parenting formula, however, a critical first step is a designation of each parent as either the Parent of Primary Residence (PPR) or the Parent of Alternate Residence (PAR). As the Guidelines note, "Either the PPR or the PAR may be the obligor of the support order depending on income and the time spent with the child. The designation of PPR and PAR is not related to the gender of either parent or the legal designation of custodial parent." See Paragraph 14b. The guidelines then set out a definition for PPR and PAR:
(1) Parent of Primary Residence (PPR)-The parent with whom the child spends most of his or her overnight time. The primary residence is the home where the child resides for more than 50% of the overnights annually. If the time spent with each parent is equal *215 (50% of overnights each), the PPR is the parent with whom the child resides while attending school....
(2) Parent of Alternate Residence (PAR)-This is the parent with whom the child resides when not living in the primary residence.
Those definitions of PPR and PAR, quite clearly, cannot be applied to this case. The most significant aspect of the court's custody determination was a precise equality of custodial time between plaintiff and defendant. Since the designations of PPR and PAR are premised on one parent having greater custodial time than the other, the normal definition simply does not work here. Even with the alternate, fall back, position set out in the rulewhen total time is equal, the PPR is the parent with whom the child resides while attending schoolis inapplicable since school nights are also equally divided between plaintiff and defendant.
Under the Guidelines, the designation of PPR and PAR is not an insignificant matter. It has tangible, monetary effects.
A critical number in applying the Guidelines formula is what is termed the "basic child support amount." That figure is provided in a table (Appendix IX F) entitled "Schedule of Child Support Awards," which sets out various amounts as representing the "combined net weekly income" of a child's two parents, and then provides a "basic child support amount for a single child whose parents have a specified `combined net weekly income.'"[1] In this case, converting the parties' combined annual income ($160,000) into weekly amounts produces a total combined net weekly income of $2,067. For that amount, the Guidelines schedule reflects a "basic child support amount" of $354 per week.
Paragraph 14 of the Guidelines explanation, which deals with shared parenting calculations, contains a subparagraph g entitled, "Assumptions of the Shared-Parenting Adjustment." That provision notes that the "basic child support amount" set out in the Guidelines (here $354 per week) actually consists of "three broad consumption categories ... as follows: 38% [represents] fixed expenses, 37% [represents] variable expenses, and 25% [represents] controlled expenses." The provision then notes the "assumption" that "fixed expenses" and "variable expenses" each represent payments which must be met, to a greater or lesser extent, by both the PPR and the PAR. Significantly, however, that is not true of "controlled expenses," which represent 25% of the "basic child support amount." With respect to that item, the Guidelines say this:
Controlled expenses are incurred by the PPR only and, thus, are apportioned between the parents based on their income shares, not in relation to time spent with the children.
The theory of that "assumption"that "controlled costs" will be incurred by the PPR only and not by the PARis spelled out in subparagraph f of Paragraph 14 of the Guidelines explanation, which describes "controlled costs" as costs "over which the PPR, as the primary caretaker of the child, has direct control. This category includes clothing, personal care, entertainment and miscellaneous expenses." The assumption that "controlled expenses" are "incurred by the PPR only" is consistent with the premise of the Guidelines, that the child will spend more time with the PPR than with the PAR. On that *216 basis, it is probably reasonable to assume that the PPR would indeed incur expenses for "clothing, personal care, entertainment and miscellaneous items," not incurred by the PAR. However, when both parents have the child an equal amount of time, we can see no rational basis for any such assumption.
As noted, the court included with its opinion a copy of the "Shared Parenting Worksheet" it completed in reaching its conclusion that defendant should pay $60 per week in child support. Tracing the court's computation on that worksheet, along with the instructions in the Guidelines for completing the worksheet, demonstrates that the court correctly performed the required mathematical computations. It set out the respective incomes of the parties and then adjusted them to reflect $300 per week in alimony paid by defendant to plaintiff. It computed the total joint weekly income of the parties ($2067), and also calculated that the defendant's income represented 52.35% of that amount and plaintiff's 47.65%. It then applied those figures to the "basic child support amount" of $354 and made appropriate adjustments to reflect the parties' shared obligations for "fixed expenses" and "variable expenses." As directed by the Guidelines, and consistent with the format of the worksheet, however, the court made no such adjustment for "controlled expenses" since they are presumed to be obligations of the PPR (plaintiff) and not the PAR (defendant). On that basis, the court reached its conclusion that the appropriate weekly child support was $60.[2]
The significance of designating plaintiff as PPR, and thus affording her the benefit of a presumption that she will bear all the "controlled expenses" respecting Chip's support (25% of $354) can be demonstrated in two ways. First, note that, since "controlled expenses" are assumed to be 25% of the "basic child support amount," and here the "basic child support amount" is $354, 25% thereof is approximately $88. If we bear in mind that the two parties will have Chip with them for an equal amount of time, and if, on that basis, we discard the assumption that the wife will bear the full cost of Chip's "clothing, personal care, entertainment and miscellaneous expenses," then it would follow that in completing the worksheet calculations to compute defendant's support obligation, he should receive an additional deduction of $44 (one-half of $88) which would have the effect of reducing the $60 per week child support figure to $16 per week.
Second, if we complete the same worksheets as the court completed here, and use the same figures and calculations as the court employed, but we substitute defendant as the PPR and plaintiff as the PARthe result is that plaintiff would be obligated to pay child support to her ex-husband in the sum of approximately $33 per week.
In short, the differences which result from two possible designations of PPR and PAR in this case are substantial indeed. *217 And while there may be bona fide reasons why plaintiff should be designated as PPR and defendant as PAR, those reasons are not apparent from the record submitted to us, nor from the court's otherwise carefully constructed, comprehensive opinion. We do note that the court assigned different responsibilities to the two parties respecting different aspects of Chip's life. However, with one minor exception, no financial responsibility was assigned with those responsibilities. Thus, consistent with the recommendation of the psychologist who testified in the matter, the court directed that plaintiff would have "primary decision-making" regarding "Chip's health, including medical, psychological and psychiatric treatment"; that defendant would have "primary decision-making regarding Chip's after school and athletic activities, including music lessons"; that plaintiff would have "primary decision-making regarding items relating to Chip's high school education and religious activities and education"; and defendant would have such decision-making authority "regarding Chip's college education." In addition, in the only demarcation of responsibility which included a specification of financial obligation, the court determined that the parties should pay equally for Chip's medical insurance, but plaintiff should pay the first $250 of any un-reimbursed expenses in a given year, with defendant to pay 53% of any additional amount and plaintiff to pay the remaining 47%. Since that $250 represents approximately $5 per week, it would not seem likely that the court would have determined, on that basis alone, to designate plaintiff as PPR and thus entitle her to the much more substantial benefits which flow from that designation. There is also some indication that, when defendant raised the PPR versus PAR designation issue in the trial court, plaintiff's attorney claimed that plaintiff was obliged to purchase Chip's clothing, and that obligation represented a justification for the PPR designation. Defendant, however, quite accurately responded that neither the court's opinion nor its judgment included any such requirement.
Finally, we note defendant's argument that the court should not have employed the guidelines dealing with "shared parenting arrangements" at all, but rather should have used the Guidelines designed for what are termed "split-parenting arrangements." The "split-parenting" provisions, however, deal with a multi-child family in which one parent has custody of one or more children, and the other parent has custody of other children. We see no rational basis for attempting to squeeze this case into that pigeonhole since the two, quite obviously, are not designed to go together.
In fact, the "shared-parenting" guidelines seem appropriate and easily applicable to this case, provided only that the court accounts for and makes an appropriate adjustment to reflect the unusual facts respecting selection of a PPR and PAR. On remand, if the court has additional reasons for its designation of plaintiff as PPR and defendant as PAR, it should set out those considerations and its reasoning in that respect, for the enlightenment of the parties and, if necessary, this court. If that is not the case, the court should not hesitate to make an appropriate adjustment to correct what otherwise would seem to be an injustice in applying the Guidelines without accounting for the unusual fact of the equal custody time between the two parents. Dividing the "controlled expenses" between the parties or designating both parents as PPR, would seem rational methods of accomplishing that end, although, if the court has some alternative which it deems more desirable, it should not feel preempted from employing such a device. Despite the agreement *218 of the parties to use the Guidelines, the court should not feel constrained from varying the method of applying the Guidelines in order to accomplish the underlying purpose of our family law jurisprudence, the rules of procedure and the Guidelines themselves: effecting substantial justice between the parties.
Reversed and remanded for further proceedings. We do not retain jurisdiction.
NOTES
[1] The schedule actually has six vertical columns, specifying "basic child support amounts" depending on whether the family consists of one, two, three, four, five or six children. Here, of course, we are concerned only with one child.
[2] In fact, the court completed two separate worksheets. In the first, it assumed that defendant would receive two income tax deductions and plaintiff one. On that basis, the worksheet calculations produced a child support obligation of $55 per week, to which the court then added an additional 14.6% because Chip was over fifteen years of age. Thus the total support obligation, on that basis, come to $63.03.

The court then performed an alternate calculation premised on plaintiff receiving the two income tax deductions (for herself and Chip), and defendant receiving just one. On that basis, and including the 14.6% adjustment, the court reached a calculation of $57.30. It concluded that it was "appropriate to average these two figures," which thus produced the court's final total of $60 per week.