**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4226-18

CHARLES SMITH,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

DANIELLE SMITH,

      Defendant-Respondent/
      Cross-Appellant.

_____

Submitted January 4, 2021 – Decided November 29, 2021

Before Judges Hoffman, Suter, and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-0192-16.

Gruber, Colabella, Liuzza & Thompson, attorneys for appellant/cross-respondent (Chris H. Colabella and Natalie L. Thompson, on the briefs).

Celli, Schlossberg, De Meo & Giusti, PC, attorneys for respondent/cross-appellant (Vincent P. Celli, of counsel and on the briefs).

The opinion of the court was delivered by

SUTER, J.A.D.

Plaintiff Charles Smith appeals the May 9, 2019, Second Amended Final Judgment of Divorce (SAFJOD) and May 24, 2019, Clarifying Order. He claims the trial court erred: (1) by designating defendant as the parent of primary residence (PPR) in calculating child support because they equally share parenting time; (2) in determining the parties' incomes for calculating alimony, college expenses for the oldest child and paying the children's unreimbursed medical expenses; (3) by eliminating a three-year credit toward his alimony obligation for pendente lite payments previously made; (4) in calculating support arrears for defendant and requiring a lump sum payment; (5) by requiring plaintiff to maintain $600,000 in life insurance to secure his alimony obligation; (6) in determining equitable distribution regarding the Sussex Turnpike property; and (7) by eliminating any investment credit for his premarital funds in his retirement account.

Defendant Danielle Smith cross-appeals the SAFJOD. She argues the trial court abused its discretion: (1) by not awarding child support for the oldest child who is in college; (2) in the manner it determined equitable distribution on the

Sussex Turnpike property and one of plaintiff's businesses; and (3) by denying her request for counsel fees.

For reasons that follow, we affirm in part, and reverse and remand in part for further proceedings consistent with this opinion.

I.

The parties were married on September 19, 1997, and have three children born in 2000, 2002 and 2005, respectively. Plaintiff filed for divorce on August 13, 2015. Defendant filed an answer and counterclaim for divorce. They agreed to joint legal and residential custody of the children in a Custody and Parenting Time Agreement (Parenting Agreement). Parenting time was equally divided, however, the oldest child resided with defendant from September 2015 to April 2018.

A pendente lite support order was entered on November 3, 2017, that required plaintiff to pay defendant $500 per month in non-taxable support. He was ordered to continue paying all Schedule A and B expenses, child support "in the same manner that he has been paying," "all health care, unreimbursed medical expenses, all extracurricular activities, clothing, . . . for the parties' children," and insurance expenses.

A-4226-18

The divorce case was tried over a period of ten days in April through July 2018. The parties stipulated to the appraised values of the marital residence and to plaintiff's residence on Sussex Turnpike, agreeing to value them at $520,000 and $350,000, respectively. The trial court entered a Final Judgment of Divorce (FJOD) on October 1, 2018, supported by a written statement of reasons.

Defendant filed a motion for a new trial and for enforcement. Plaintiff filed a cross-motion in opposition and to clarify certain issues. On March 29, 2019, the trial court entered an Amended Final Judgment of Divorce (AFJOD) supported by a written statement of reasons, which made significant changes in the FJOD regarding alimony, alimony arrears and equitable distribution. The court found "there was clearly and convincingly a miscarriage of justice on certain issues previously decided by [the] [c]ourt."

Counsel for the parties and the court conducted a phone conference about issues they raised regarding the AFJOD. On May 9, 2019, the trial court issued the SAFJOD, which again made changes, and issued another written statement of reasons.

Defendant requested a clarifying order claiming there was a discrepancy between the SAFJOD and the court's statement of reasons. On May 24, 2019,

the trial court issued an "Order Clarifying Equitable Distribution of . . . Sussex Turnpike."

Plaintiff filed a notice of appeal, raising the following issues:

POINT I

THE TRIAL COURT ERRED IN MAKING DEFENDANT THE PARENT OF PRIMARY RESIDENCE FOR PURPOSES OF CALCULATING CHILD SUPPORT AND NOT PROVIDING PLAINTIFF WITH THE ADJUSTMENT PROVIDED FOR IN WUNSCH V. DEFFLER.

POINT II

CONTRIBUTION FOR [S.S.'s] COLLEGE AND UNREIMBURSED MEDICAL EXPENSES MUST BE RECALCULATED IN THE EVENT THE COURT CORRECTS ERRORS IN THE DETERMINATION OF THE PARTIES' INCOMES AND THE ALIMONY AMOUNT.

POINT III

THE TRIAL COURT DID NOT CORRECTLY CALCULATE THE INCOMES OF THE PARTIES WHEN DETERMINING ALIMONY.

POINT IV

THERE WAS NO MANIFEST INJUSTICE IN THE FINAL JUDGMENT OF DIVORCE WHICH WARRANTED THE DETERMINATION TO ELIMINATE THE THREE-YEAR CREDIT AWARDED TO PLAINTIFF FOR THE PENDENTE LITE ALIMONY PAID.

POINT V

THE DECISION TO AWARD DEFENDANT WITH A LUMP SUM ARREARS PAYMENT DID NOT CONSIDER THE SUBSTANTIAL PENDENTE LITE SUPPORT PAID BY PLAINTIFF.

POINT VI

$600,000.00 OF LIFE INSURANCE WITH NO DECREASE OVER THE TERM OF ALIMONY WAS AN ABUSE OF DISCRETION.

POINT VII

THE FINAL DETERMINATION WITH REGARD TO DEFENDANT'S INTEREST IN . . . SUSSEX TURNPIKE CONTAINED MULTIPLE MISCALULATIONS [sic], CONTRADICTIONS, AND ERRORS AND MUST BE REMANDED FOR THE CORRECT ANALYSIS AND CALULATIONS [sic] TO BE MADE.

POINT VIII

THE TRIAL COURT ERRED IN FINDING THAT D-25 WAS AN AGREED-UPON SPREADSHEET.

POINT IX

THE DETERMINATION NOT TO AWARD PLAINTIFF WITH GAINS ON HIS PREMARITAL FUNDS IN THE CHARLES SCHWAB ACCOUNT WAS AN ERROR.

A-4226-18

POINT X

THE DETERMINATIONS IN THE FINAL JUDGMENT OF DIVORCE RELATIVE TO PROVIDING PLAINTIFF WITH: THE <u>WUNSCH V. DEFFLER</u> ADJUSTMENT FOR PURPOSES OF CALCULATING CHILD SUPPORT; A REDUCTION IN INCOME OF $12,000 FOR COMMUTING EXPENSES; THREE YEARS OF CREDIT ON HIS ALIMONY OBLIGATION; THE PROPERTY AT . . . SUSSEX TURNPIKE WITH A CREDIT OF $62,858.93 TO DEFENDANT; AND INTEREST ON THE PREMARITAL FUNDS DEPOSITED INTO THE CHARLES SCHWAB ACCOUNT SHOULD NOT HAVE BEEN DISTURBED.

Defendant filed a cross-notice of appeal, raising additional issues:

POINT I
THE TRIAL COURT'S DECISIONS TO NAME RESPONDENT THE PARENT OF PRIMARY RESIDENCE FOR PURPOSES OF CALCULATING CHILD SUPPORT AND TO DENY APPELLANT'S REQUEST FOR THE WUNSCH-DEFFLER ADJUSTMENT WERE WITHIN THE DISCRETION OF THE COURT.

POINT II
THE TRIAL COURT'S FAILURE TO ORDER THE PARTIES TO SHARE CHILD SUPPORT AND UNREIMBURSED MEDICAL EXPENSES FOR [S.S.], CHILD OF THE MARRIAGE, WAS AN ABUSE OF DISCRETION.

POINT III
THE TRIAL COURT DID NOT CORRECTLY DETERMINE THE INCOMES OF THE PARTIES FROM THE TESTIMONY AND DOCUMENTARY

EVIDENCE FOR ALIMONY AND CHILD SUPPORT PURPOSES.

POINT IV
APPELLANT IS NOT ENTITLED TO AN ADJUSTMENT IN THE NATURE, AMOUNT OR DURATION OF ALIMONY UNDER N.J.S. 2A:34-23b(13), BECAUSE THE MAJORITY OF THE SUPPORT PAYMENTS HE MADE WERE NOT PENDENTE LITE SUPPORT AND BECAUSE HE HAD NOT MADE THE PAYMENTS UNDER THE SHORT-LIVED PENDENTE LITE ORDER.

POINT V
THE TRIAL COURT'S DECISION TO REQUIRE APPELLANT TO MAINTAIN LIFE INSURANCE COVERAGE SECURING HIS ALIMONY OBLIGATION IN THE AMOUNT OF $600,000.00 WAS NOT AN ABUSE OF DISCRETION.

POINT VI
THE TRIAL COURT'S DECISIONS WITH RESPECT TO EQUITABLE DISTRIBUTION OF . . . SUSSEX TURNPIKE AND THE COMMACK JEWELRY EXCHANGE DO NOT COMPORT WITH THE TESTIMONY AND DOCUMENTARY EVIDENCE ADDUCED AT TRIAL AND THUS CONSTITUTE AN ABUSE OF DISCRETION.

POINT VII
THE TRIAL COURT'S DECISION DECLINING TO AWARD APPELLANT WITH GAINS ON HIS PREMARITAL ASSETS IN THE CHARLES SCHWAB ACCOUNT WAS WITHIN THE DISCRETION OF THE COURT, BECAUSE APPELLANT DID NOT SUSTAIN HIS BURDEN OF PROOF.

POINT VIII
THE TRIAL COURT ABUSED ITS DISCRETION
WHEN IT FOUND APPELLANT TO BE A GOOD
FAITH, CREDIBLE WITNESS AND DENIED
RESPONDENT'S REQUEST FOR COUNSEL FEES,
EXPERT FEES AND COSTS OF THE LITIGATION.

II.

We accord "great deference to discretionary decisions of Family Part judges," Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (citations omitted), in recognition of the "family courts' special jurisdiction and expertise in family matters." N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). When the issue presented turns on a legal conclusion derived from the Family Part's factfinding, "we are not required to defer." N.J. Div. of Youth & Fam. Servs. v. A.R., 419 N.J. Super. 538, 542-43 (App. Div. 2011).

We relate the evidence as necessary to address each of the issues the parties have raised on appeal.

A.  Child Support

Plaintiff argues the trial court erred by designating defendant the PPR because he and defendant equally share parenting time.  Plaintiff argues the court should not have removed the Wunsch-Deffler[1] adjustment from the child support calculation because of the equal nature of their parenting time.

In the FJOD, the trial court found "for all intents and purposes, the parties have 50/50 responsibilities for their children" and that "the parental responsibilities are the same for both parties."  It ordered plaintiff and defendant to continue to share joint legal custody of the three children and to follow their Parenting Agreement.  Plaintiff was ordered to pay $93 per week in child support for the two younger children based on the Child Support Guidelines (Guidelines), "adjusting for the Wunsch-Deffler computation."  The oldest child was scheduled to attend college.  The trial court ordered plaintiff to pay sixty-five percent of his college expenses and defendant to pay thirty-five percent after the child applied for "scholarships, loans, grants, and all other financial aid, where eligible."  This was based on the parties' incomes.  There was no additional child support ordered for the child in college.

---

[1]  Wunsch-Deffler v. Deffler, 406 N.J. Super. 505 (Ch. Div. 2009).

A-4226-18

The AFJOD resolved issues raised in defendant's motion for a new trial. In the AFJOD, the court again found the parties equally shared responsibilities for the children although defendant testified the oldest child (S.S.) did not stay overnight with plaintiff during the fall of 2017 to early 2018. The court used new income figures to recalculate child support. Under the AFJOD, plaintiff's child support obligation increased for the two younger children from $93 to $131 per week. The amount plaintiff needed to pay for S.S.'s college was reduced to sixty percent from sixty-five, and defendant's responsibility was increased to forty percent from thirty-five. The trial court did not order child support for S.S. because both parties paid his expenses for college. They "share[d] parenting time and expenses for [S.S.]" when he was home. The court did not provide any adjustment under Wunsch-Deffler even though it had found the parties had "50/50 responsibilities for their children."

The SAFJOD was issued in May 2019 after the court conducted a phone conference with the parties. The court did not change the child support calculation, but reiterated the parties had equal responsibilities regarding their children. It explained it had removed the Wunsch-Deffler credit in the AFJOD because the adjustment would "cause an unjust result." This was in consideration of "the testimony at trial and the daily expenditures for the

children which largely fell of [sic] the defendant" and warranted the modification. The trial court did not explain what testimony or evidence it was referencing.

The court found no miscarriage of justice by not including a separate amount for S.S.'s child support because both parents were sharing financial responsibility for his college expenses, and they shared parenting time and expenses when S.S. was home.

"The trial court has substantial discretion in making a child support award." Foust v. Glaser, 340 N.J. Super. 312, 315 (App. Div. 2001). We "will not overturn an award of child support unless we conclude that the award was manifestly arbitrary, unreasonable or contrary to the evidence." Loro v. Colliano, 354 N.J. Super. 212, 220 (App. Div. 2002). A child support award that is consistent with the applicable law "will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice." Gotlib v. Gotlib, 399 N.J. Super. 295, 309 (App. Div. 2008) (internal quotation marks omitted).

In Benisch v. Benisch, 347 N.J. Super. 393, 394-95, 398 (App. Div. 2002), the trial court calculated child support using the Guidelines, designating the plaintiff as PPR even though the parties equally shared custody of their child.

We reversed, explaining that "[s]ince the designations of PPR and PAR[2] are premised on one parent having greater custodial time than the other, the normal definition simply does not work here." Id. at 396. We noted "controlled expenses" were twenty-five percent of the basic child support amount and, under the Guidelines, it was assumed these were incurred by the PPR. With equal parenting time, this assumption did not apply. Id. at 397. Benisch suggested the defendant could receive a reduction in his support obligation of one-half of the controlled expense portion of the basic child support where there is equal parenting time and that the shared parenting Guidelines were appropriate to use. Id. at 399. We noted that there could be bona fide reasons for not doing this. Ibid. On remand, we directed the trial court to provide its reasons for designating one of the parents as the PPR. Id. at 400. Failing that, we directed the trial court to "make an appropriate adjustment . . . ." Id. at 400-01. The choice of methodology rested in the trial court's discretion. Id. at 401.

In Wunsch-Deffler, 406 N.J. Super. at 508-09, the Family Court judge addressed a situation where parents equally shared parenting time with their children. The procedure used adjusted "the paying parent's child support

[2] Parent of Alternate Residence (PAR).

obligation to account for the fact that both parties are responsible for paying the child's 'controlled expenses' during their parenting time." Id. at 509.

Here, the parties do not dispute they equally share parenting time with the two younger children. The trial court did not explain why it designated defendant as PPR in the AFJOD and SAFJOD. As was the case in Benisch, the court is required to provide an explanation. 347 N.J. Super. at 399.

The trial court also did not explain why the Wunsch-Deffler adjustment was applied and then removed. When it applied the Wunsch-Deffler adjustment under the FJOD, it did not explain its calculation. It used the sole parenting worksheet rather than the shared parenting worksheet. Ibid. If there is no bona fide reason to designate defendant as PPR, the child support calculation should be adjusted consistent with Benisch for the two younger children. The trial court can use the formula in Wunsch-Deffler or an alternative if "more desirable." Id. at 401.

Because the trial court did not provide any reason for designating defendant as PPR and because its removal of the Wunsch-Deffler adjustment is not consistent with its finding of shared responsibility, we reverse the court's designation of defendant as PPR and remand the child support calculation to the trial court. If defendant is to be designated the PPR, it must make findings to

support that based on the record. If there are not bona fide reasons, then an adjustment for controlled expenses must be made to be consistent with Benisch.

Defendant argues plaintiff is precluded from making any adjustment under Wunsch-Deffler because he did not previously request this, and he has not shown a hardship. However, neither of these requirements are included in Benisch or even in Wunsch-Deffler, nor is it equitable because the purpose of the adjustment is to avoid the hardship of paying twice for the same expenses. See Wunsch-Deffler, 406 N.J. Super. at 508 (an adjustment to the payor's child support obligation was necessary "to account for the parties' shared parenting time and the fact that both parties were responsible for their children's controlled expenses").

B. Income Calculation for Alimony and Other Issues

Plaintiff argues the trial court improperly calculated his income, which affected issues such as alimony, college expenses and unreimbursed medical expenses. Plaintiff argues the trial court should have deducted $12,000 from his income for commuting expenses. He argues that income from another property, the Carleton Avenue[3] property, should not have been charged to him.

_____

[3] This property was owned equally by plaintiff and his business partner in the name of a corporation that was formed to hold this property.

Plaintiff's annual gross income was $200,000. When the trial court calculated alimony under the FJOD, it deducted $12,000 for estimated commuting expenses even though plaintiff's "employer provide[d] for some travel expenses," and the commuting expenses themselves were an estimate. The court then added $12,000 in income from an investment property on "Carleton Avenue," increasing plaintiff's income figure to $200,000, which was the figure used to calculate alimony.

The trial court found defendant's income was $58,500 comprised of annual earnings of $36,000 from her employment, $10,500 in rental income from the marital residence, and $12,000 reflecting her one-half share of a business that was partly owned by plaintiff called "Commack Jewelry Exchange d/b/a/ F&N Management" (CJE).[4] The difference between their incomes was $141,500 annually.

Under the AFJOD, the trial court determined it erred in calculating plaintiff's income. It found there was no "reliable" evidence of the $12,000 in commuting expenses it had deducted and would not "speculate" about this.

---

[4] Plaintiff argues that reference to the Carleton Avenue property in his income calculation was a typographical error and that the trial court meant to say "Commack" because it included income from "Commack" in defendant's income calculation.

Therefore, it increased plaintiff's income to $212,000,[5] using that figure for alimony, child support and unreimbursed medical expenses.

The trial court downwardly adjusted defendant's income to $41,200 by removing the value of the vehicle provided by her employer for her use because she was not able to use it for personal purposes. The court slightly reduced the rental income she received from the marital property to $10,200. The court determined the gap in income between the parties was $170,800. It did not explain why income from CJE was excluded in that calculation even though it referred later in its statement of reasons to equally dividing the income from CJE as part of equitable distribution. The trial court applied the new income figures for plaintiff and defendant in calculating alimony, child support, and unreimbursed medical expenses. The trial court did not make any changes to these amounts in the SAFJOD although it added that "[t]he inconsistent income from [CJE], which is equal to both parties, shall not be considered in the income calculations to either party."

We find no abuse of discretion by the trial court by not deducting commuting expenses from plaintiff's income. Plaintiff cited no authority that requires the trial court to make this deduction from his income. The record did

---

[5] This continued to include the annual income of $12,000 from Carleton Avenue.

not support plaintiff's claim he was incurring expenses of $12,000 annually. His estimated expenses were slightly more than half this amount. The court also found that plaintiff's employer paid for some of his travel expenses. Plaintiff could claim these expenses under Schedule B of his Case Information Statement.

We find no abuse of discretion by the trial court's elimination of income from CJE in calculating both parties' incomes. The trial court found the income from CJE was inconsistent and would be equally shared by both parties as part of equitable distribution. The record supported the inconsistency.

We remand to the trial court, however, the portion of the SAFJOD that included $12,000 annually from the Carleton Avenue property in calculating plaintiff's income. Our review of the record shows income reported from this property fluctuated over the years but for the most part did not exceed $12,000. The trial court was required to explain its findings for our review. We are not able to ascertain the basis for this $12,000 amount and thus, reverse the inclusion of this amount and remand this issue to the trial court. This issue may affect other issues that rely on the income calculation. If so, then the trial court will be required to reexamine the issues that are affected.

18

C. Alimony

Plaintiff argues the trial court erred by removing the three-year alimony credit it included in the FJOD for his payment of pendente lite expenses. Plaintiff contends he "paid nearly every expense for the marital residence, the children, and [d]efendant" during the three years between the filing of the complaint for divorce and the trial, and it was appropriate to provide this credit.

The parties agreed when plaintiff moved out in August 2015, that he would pay the Schedule A and B expenses for the family except for defendant's vehicle. He also paid an additional $1150 per month to defendant for bills, food, and other expenses for the children. He paid these amounts until March 2017. In October 2017, defendant applied for a court order requiring plaintiff to pay the Schedule A and B expenses plus an additional $1150 per month. Plaintiff filed a cross-motion requesting imputation of income to defendant and requiring her to contribute to expenses of the marital residence. When the pendente lite order was entered in November 2017, the court required plaintiff to pay Schedule A and B expenses but reduced the additional amount paid to defendant from $1150 per month to $500 per month.

At trial, defendant testified $12,064 in bills had not been reimbursed by plaintiff. She testified this increased to $17,418.74 by June 29, 2018.

Under the FJOD, the trial court ordered plaintiff to pay limited duration alimony of $898 per week to defendant for ten years, but credited plaintiff for three years because of the pendente lite support he paid to defendant prior to entry of the FJOD. This effectively reduced plaintiff's obligation to seven years. In the court's written opinion, it found "it appropriate to award [p]laintiff for three. . . years' worth of credit whereby he paid appropriate levels of pendente lite support to [d]efendant." The court determined that the annual alimony amount would be one-third of the income gap between the parties calculated on a weekly basis. The court found plaintiff had support arrears of $18,932.97. These were to be paid to defendant at $182 per week for two years in addition to the weekly alimony payments of $898.

In defendant's motion for a new trial, she sought to vacate the three-year credit, arguing that to obtain it, the support must be paid pursuant to a pendente lite support order, which was not entered until November 2017. She requested an order granting open durational alimony. The parties had lived together in California for three years prior to their marriage. Plaintiff's income was far more than hers at the time, and she claimed economic dependence for those three years. Defendant requested payment of the alimony arrears in a lump sum rather than in installments over two-years.

A-4226-18

In the AFJOD, the court addressed payments plaintiff made before the pendente order, noting the "payments were made to maintain the status quo of the parties, their children, and their two residences." The court noted, however, the "payments were inconsistent throughout the pendency of the divorce." It concluded it "was a miscarriage of justice" to have granted the three-year credit. It vacated that portion of the FJOD.

Based on adjustments the trial court made to the parties' incomes, the gap now was $170,800, which the court concluded required a recalculation of alimony. The court also took into consideration defendant's mortgage and home equity line of credit of $4,419.58. Under the AFJOD, plaintiff's alimony to defendant increased from $898 to $1,205 per week for ten years. The ten-year term was based on the duration of the marriage, lifestyle, ability of both parties to obtain employment and "sacrifices made during the term of the marriage."

Plaintiff's former alimony "arrears" were recast by the trial court as "a previously unpaid [c]ourt ordered debt." Although the amount to re-pay remained $18,932.97, plaintiff now was required to pay this as a lump sum "upon equitable distribution of the parties' joint marital assets," rather than over a period of two years.

21

In the SAFJOD, the trial court repeated its finding that it was a miscarriage of justice to grant a three-year credit for plaintiff's pendente lite payments of support. It maintained the ten-year alimony term, requiring plaintiff to pay alimony of $1,205 per week.

We review this issue under an abuse of discretion standard. J.E.V. v. K.V., 426 N.J. Super. 475, 485 (App. Div. 2012). A court has abused its discretion "if the discretionary act was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment." Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005).

N.J.S.A. 2A:34-23(b)(13) requires a court to consider "[t]he nature, amount, and length of pendente lite support paid" when awarding alimony. The language of the statute does not require that the "pendente lite support" must be court-ordered to be considered in determining alimony. Trial "[c]ourts have the equitable power to establish alimony . . . ." Crews v. Crews, 164 N.J. 11, 24 (2000).

In the AFJOD and SAFJOD, the trial court concluded that the previously ordered three-year credit was a miscarriage of justice. This finding was based on the increased gap in the parties' incomes, defendant's mortgage and home

22

equity loan, duration of the marriage (seventeen years),[6] lifestyle, ability of the parties to obtain employment and "sacrifices" during the marriage. Plaintiff's payments of pendente lite support also had been "inconsistent" and there were significant arrears. We are satisfied the court considered the factors in N.J.S.A. 2A:34-23(b) and relied on the record in reaching a conclusion based on sufficient credible evidence in the record, that it should not grant a three-year alimony credit. On this record, we do not agree that there was an abuse of discretion.

D. Support Arrears

Plaintiff argues the trial court abused its discretion by finding he owed $18,932.97 in arrears. Although we agree there are arrears, we are unable to determine how the trial court arrived at the amount and remand this issue to the trial court.

Defendant testified that by June 29, 2018, plaintiff owed arrears of $17,418.74. In the FJOD, the trial court found plaintiff had outstanding alimony arrears of $18,932.97 "as ordered by [the judge who entered the pendente lite award]." However, the November 2017 pendente lite order did not include a

---

[6] The trial court rejected defendant's request to count the first three years, when the parties resided in California before their marriage.

specific amount for arrears. In fact, the motion judge directed the parties to reserve their arguments until the trial regarding the arrears amount. The same arrears amount ($18,932.97) was found by the trial court in the AFJOD and again in the SAFJOD.

The record did support the presence of arrears. Because we cannot find support for the amount that was ordered, we reverse the amount of the arrears and remand this issue to the trial court for additional findings. The court should also consider plaintiff's ability to pay this amount in a lump sum as it previously ordered.

E. Life Insurance

Plaintiff argues the requirement he maintain $600,000 in life insurance for his alimony obligation was an error and that it should decline over time to reflect his declining alimony obligations. Defendant argues plaintiff never asked for this relief from the trial court and now should be precluded from this.

Under the FJOD, plaintiff was ordered to allocate $350,000 of his existing $800,000 life insurance policy to cover his alimony obligation. The children were named as irrevocable beneficiaries on the remaining $450,000 until their emancipation.

A-4226-18

Under the AFJOD, the court modified its allocation, ordering plaintiff to allocate $600,000 of his $800,000 policy for alimony, with the remaining amount ($200,000) for the children. The court continued the same requirements under the SAFJOD.

Relevant here, none of the trial court's judgments, including the SAFJOD, had a provision to reduce the life insurance requirement to reflect plaintiff's declining obligation to pay alimony. Plaintiff did not ask the trial court for a declining balance provision. We agree with defendant, therefore, that plaintiff did not raise this issue before the trial court. Because of that, we decline to address this argument. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (providing "[i]t is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court").

F. Sussex Turnpike Property

Plaintiff argues the trial court erred in determining the amount of equitable distribution allocated for the Sussex Turnpike property because it did not appropriately consider plaintiff's equity in the property or marital funds used to repair it.

Defendant cross-appealed the same issue. She contends she should have received a credit of $130,061 for marital funds used to purchase and to renovate

this property.  She also claims she should have received one-half of the equity for an equitable distribution amount of $185,344.

We review the trial court's equitable distribution findings under a deferential standard of review.  Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016).  The trial court's findings "are binding on appeal when supported by adequate, substantial, credible evidence."  Id. at 283 (quoting Cesare, 154 N.J. at 411-12).

Under the FJOD, plaintiff was granted exclusive possession of the Sussex Turnpike property and defendant the marital home.  Plaintiff was awarded a credit for fifty percent of the equity in the marital property.[7]

The Sussex Turnpike property was found to be a marital asset and the equity would be divided.  The parties stipulated the value was $350,000.  After deducting the amount of the outstanding mortgage ($239,435.10), defendant was credited with fifty percent of the equity or $55,282.45.  She also was awarded a credit of $7,576.48, representing fifty percent of the marital funds used to renovate the property based on Exhibit D-37 prepared by defendant, an exhibit

---

[7] The marital property was appraised at $520,000, had a first mortgage pf $127,928.47 and home equity loan of $153,029.56, leaving equity of $239,041.97 of which defendant received a fifty percent credit of $119,520.99. This property included a rental unit within it, which rented for $875 per month.

which the court found to be competent evidence.  Defendant's total credit was $62,858.93.

Under the AFJOD, the trial court increased defendant's equitable distribution for this property to $185,500.  Determining that the expense to buy and renovate the Sussex Turnpike property was $371,000, the court awarded fifty percent of this amount ($185,500) to defendant as a credit.  It did not reduce the $371,000 figure by the existing mortgage.  The court found the $239,435.10 mortgage on the property was taken out and used by plaintiff to repay the individuals who loaned him money to acquire and renovate the property, but not for defendant.

Under the SAFJOD, defendant was accorded a $65,121.96 credit that the court found represented fifty percent of the equity in the property.  In its statement of reasons, the court found the property was a marital asset and the equity should be divided.  It found the amount to renovate the property was "an additional $65,121.96."  The court again excluded consideration of the $239,435.10 mortgage because it "was only utilized to repay monies borrowed from sources other than the [d]efendant."  It then stated, "the equity shall be divided equally between the parties with the [d]efendant entitled to $175,686.86 . . . ."  It is not clear how the $175,686.86 figure was derived using this analysis.

27

The court entered a clarifying order on May 24, 2019, based on correspondence from the parties. In it the court stated the $175,686.86 credit to defendant for the Sussex Turnpike property was comprised of $65,121.96, representing "[fifty percent] of the current equity in the property" and a credit for "[d]efendant's equitable share of the marital funds utilized by [p]laintiff to acquire and renovate the said property, in the amount of $110,564.90 . . . ." The court's cover letter to the clarifying order noted that the $65,121.96 was in addition to the $350,000 stipulated value of the property less the mortgage of "$110,564.90." The mortgage amount was $239,435.10, not $110,564.90.

The trial court's order contained errors. It is not clear how the trial court determined the equity in this property was $65,121.96. If the stipulated value of the property was $350,000 and the mortgage was $239,435.10, the difference of $110,564.90 would be the equity, which when divided in half would result in $55,282.45. The court also stated that defendant's share of the marital funds used to renovate the property was $110,564.90, but this figure was the equity in the property using $350,000 as the stipulated value and subtracting $239,435.10. This figure also takes into consideration the amount of the mortgage, a figure which the court twice said it excluded.

The $65,121.96 figure may have been the additional amount of marital funds used to buy and renovate the property, but the court does not explain how it arrived at this figure. Mathematically this is the difference between $415,121.96, which is what defendant said was used to purchase and renovate the property, and the appraised value of the property, $350,000. The court does appear to have taken D-25 and adjustments into consideration. However, $65,121.96 is not fifty percent of the equity. Thus, it is not clear how the $65,121.96 fits into the court's equations.

It also is not clear how the court reached the figure of $175,686.86 or why that is supposed to be half of the equity. Mathematically, the figures of $65,121.96 (alleged to be half of the equity of the property) and $110,564.90 (the alleged equity in the property not reduced by fifty percent), when added-up, equal $175,686.86. However, $110,564.90 is the full amount without giving any recognition to plaintiff's fifty percent, and it does not explain the aforesaid problems in reaching the component portions of the calculation.

We must conclude that the trial court abused its discretion on this issue. It was the trial court's obligation to make findings of fact and conclusions of law from the record. Our meaningful review requires an accurate explanation by the trial court of its analysis. Although we can mathematically derive the figure of

29

$175,686.86, it does not make sense in this context nor did the trial court explain it.

Defendant argues the trial court should have awarded her half of the equity in this property and half of the marital funds used to renovate it. Frankly, until we are provided with a cogent analysis we can review, we cannot resolve whether this is double counting. We reverse the equitable distribution for the Sussex Turnpike property and remand this issue to the trial court to make appropriate findings of fact and conclusions of law based on the record.

G. Plaintiff's Pre-marital Funds

Plaintiff argues the trial court erred by not crediting any growth in income on his premarital funds in an investment account.

In the FJOD, the court found plaintiff invested $48,538.25[8] of premarital funds in an investment account. Plaintiff "offered testimony . . . [about] the average rate of return. . . since 2008." The court determined the appreciated value of the account by using a three percent rate of return, rejecting plaintiff's calculation that would have further increased his share of this account. The trial court ordered plaintiff was entitled to $77,659.60 from this investment account.

---

[8] Defendant has not challenged this amount.

It then subtracted that amount from the account balance, dividing the remainder between the parties on a fifty-fifty basis.

Defendant argued in her motion for a new trial that plaintiff was not entitled to any appreciated value in this account because he did not present expert testimony about how the account had grown.

Under the AFJOD, the trial court reduced the exempt portion of this account to $48,537.25. This reflected only the premarital funds plaintiff invested without any recognition for investment growth. The court rejected plaintiff's calculations about rate of return as not reliable.[9] However, it also concluded that it had erred in the FJOD by "sua sponte imposing any increase that was not supported by testimony." The court removed all appreciated value, allowing plaintiff only the amount he deposited in the account prior to his marriage. The trial court did not modify its decision in the SAFJOD. The trial court found it "cannot adjust the premarital asset," concluding plaintiff was only "entitled to what was deposited."

_____

[9] Plaintiff had no statements for this account from 2001 through 2007. He used statements from 2008 through 2018, calculating the return on investment on all funds in the account, which by then also included marital funds, and applied that rate of return to the premarital portion. The court rejected this, initially applying a flat three percent return. Plaintiff did not challenge application of that rate on appeal.

A-4226-18

Property brought into the marriage by either party "will remain the[ir] separate property . . . [and] will not qualify as an asset eligible for distribution." Painter v. Painter, 65 N.J. 196, 214 (1974). "[I]f such property . . . later increases in value, such increment enjoys a like immunity." Ibid. "The burden of establishing such immunity as to any particular asset will rest upon the spouse who asserts it." Ibid.

We conclude the trial court should have attributed an appropriate rate of return on the premarital funds. "The goal of equitable distribution . . . is to effect a fair and just division of marital assets." Steneken v. Steneken, 183 N.J. 290, 299 (2005) (quoting Steneken v. Steneken, 367 N. J. Super. 427, 434 (App. Div. 2004)). "[M]ere difficulty in determining the quantum of value of a party's claim is no reason to bar that claim if it is otherwise established." Miller v. Miller, 160 N.J. 408, 424 (1999) (quoting Whitfield v. Whitfield, 222 N.J. Super. 36, 47 (App. Div. 1987)).

In Miller, 160 N.J. at 424-25, the Court found income that could have been earned on plaintiff's investments for purposes of determining alimony should be reasonably estimated using the average long-term corporate bond rate of return. The Court found our trial courts were capable of this type of analysis. Id. at 424.

Here, the trial court should have attributed an appropriate rate of return in light of the unchallenged appreciation in this account. We reverse and remand this issue for the trial court to apply an appropriate rate of return.[10]

## III.

### A. Child Support for Child in College

Defendant argues in her cross-appeal that the trial court erred by not making a separate calculation for child support for S.S., which would be in addition to the college expenses that were apportioned based on their incomes.

In the FJOD, the trial court allocated responsibility for S.S.'s college expenses based on the parties' proportionate incomes. In the AFJOD, the court modified the proportions, but did not include a separate child support amount for S.S. The trial court determined this was not a miscarriage of justice because "[b]oth parents bear financial responsibility for [S.S.]'s attendance at college and, when [S.S.] is home from school, the parents share parenting time with and expenses for [S.S.]." The trial court made the same decision in the SAFJOD. This was even though both the AFJOD and SAFJOD eliminated the Wunsch-Deffler adjustment and designated defendant as the PPR.

---

[10] We conclude plaintiff's further arguments under this point are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-4226-18

"The payment of college costs differs from the payment of child support for a college student." Jacoby v. Jacoby, 427 N.J. Super. 109, 121 (App. Div. 2012) (citing Hudson v. Hudson, 315 N.J. Super. 577, 584 (App. Div. 1998) (providing "[c]hild support and contribution to college expenses are two discrete yet related obligations imposed on parents.")). In this case, the Guidelines no longer applied to calculate child support for S.S. because he was living away from home at college. See Jacoby, 427 N.J. Super. at 113 (providing "[r]esort to the [Guidelines] to make support calculations for college students living away from home is error"). The child's support had to be calculated utilizing the statutory factors set forth in N.J.S.A. 2A:34-23(a). Child support for the two remaining minor children required application of the Guidelines.

Although it appears the trial court considered some of the factors under N.J.S.A. 2A:34-23(a), such as factor 23(a)(1) "[n]eeds of the child," factor (a)(2) "[s]tandard of living and economic circumstances of each parent" and factor 23(a)(5) "[n]eed and capacity of the child for education, including higher education," it is not clear the trial court considered the other factors in this statute, particularly those related to income and the parties other financial responsibilities. It also did not explain why child support was unnecessary, having designated one parent as PPR and having eliminated the Wunsch-Deffler

adjustment, while at the same time finding the parties equally shared parenting responsibilities. These outcomes appear inconsistent.

We reverse the portion of the order that omitted child support for S.S. and remand for consideration by the trial court based on consideration of all the statutory factors.

B. CJE

Defendant contends that plaintiff's ownership interest in CJE should have been equally divided between the parties instead of simply apportioning its income as the court ordered.

As explained by the trial court, "[CJE] is a relatively simple business." Plaintiff and three other partners owned the business. Plaintiff had a 14.167% interest. Ibid. The business "rent[ed] a large space to operate the jewelry exchange." Ibid. It then "lease[d] or rent[ed] space to various jewelry and eyewear businesses . . . . The partners earn[ed] money through the rents paid by the vendors." Ibid. What they earned "varie[d] depending upon the number of vendors and the terms of the existing leases." Ibid.

The trial court found defendant received income from CJE of $2000 per month but there was no reliable testimony about the value of the company. In the FJOD, the trial court equally divided plaintiff's 14.167% ownership interest,

determining the partnership would be required to send defendant checks for 7.0835% of the monthly profits.

Defendant's new trial motion asked the trial court to distribute CJE based on its purchase price. The court did not grant that relief but ordered the payment method to be modified by requiring plaintiff to pay defendant fifty percent of any income he received. The SAFJOD ordered the same. It also did not include income from CJE in the income of either party for purposes of calculating alimony, child support or unreimbursed medical expenses.

In the SAFJOD, the trial court explained it found plaintiff's testimony credible about the difficulty of valuing the business, and it lacked jurisdiction over the other business partners. Therefore, rather than divide plaintiff's ownership percentage, it determined to "provide [d]efendant with [fifty percent] of the income." The court found "[u]nder the circumstances, this [was] the only equitable way to proceed with this type of business when no testimony was provided at trial to evaluate the business or to predict future earnings."

We review these issues for abuse of discretion. See Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012) (providing "[a] Family Part judge has broad discretion in . . . allocating assets subject to equitable distribution").

We find no abuse of discretion regarding CJE's income. There was no evidence to ascertain the value of this business. Its income was inconsistent. We see no abuse of discretion by the trial court's order that the income from the business was to be shared equally by the parties. Plaintiff even acknowledged that if the business were sold, he would split the proceeds with defendant. We affirm this issue with the modification that on remand, the trial court clarify that fifty percent of any proceeds to plaintiff from the sale of this business be provided to defendant.

C.  Home Equity Loan

Defendant argues the full amount of their home equity loan should have been allocated to plaintiff because these monies were used for various business deals during the marriage.

With respect to this claim, plaintiff testified he used the home equity loan for various business ventures until the line of credit was frozen in 2008. We find no abuse of discretion by the trial court's rejection of defendant's arguments and its conclusion that although "[p]laintiff engaged in speculative investments without first consulting with [d]efendant," his actions "were conducted with the best interests of the family assets, or as best as [p]laintiff comprehended same."

37

D.  Attorney Fees

Defendant argues the trial court erred by denying her request for counsel fees.  She claims plaintiff acted in bad faith prior to trial.

"An allowance for counsel fees is permitted to any party in a divorce action . . . ."  Slutsky v. Slutsky, 451 N.J. Super. 332, 366 (App. Div. 2017).  In determining whether a fee award is appropriate, the court must consider:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.
>
> [Ibid. (quoting R. 5:3–5(c)).]

"We will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion."  Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (citing Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

The trial court denied both parties requests for attorney's fees in the FJOD, AFJOD and SAFJOD.  It determined that neither party acted in bad faith during

the litigation. Because the parties would be in similar financial circumstances after judgments, the trial court found they each could pay their own counsel fees.

We find no abuse of discretion by the trial court. The court appropriately considered the factors under Rule 5:3-5(c) in reaching its decision.

## IV.

We reverse and remand the trial court's order: (1) determining child support, the designation of defendant as PPR, denial of the Wunsch-Deffler adjustment or another appropriate adjustment, and lack of child support for S.S.; (2) including $12,000 from Carleton Avenue in plaintiff's income calculation; (3) determining the amount of the support arrears at $18,932.97; (4) determining the equitable distribution for the Sussex Turnpike property; and (5) failing to include an appropriate rate of return on plaintiff's premarital funds in the investment account. We affirm on the other issues raised.

Plaintiff's appeal is affirmed in part, and reversed and remanded in part. Defendant's cross-appeal is affirmed in part, and reversed and remanded in part. We do not retain jurisdiction of either appeal.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4226-18