**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0358-23

E.C.,

    Plaintiff-Appellant,

v.

R.L.S., JR.,[1]

    Defendant-Respondent.

_____

Submitted February 4, 2025 – Decided May 5, 2025

Before Judges Sumners and Perez Friscia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FD-14-0046-23.

Jacobs Berger, LLC, attorneys for appellant (Jamie N. Berger and Holly M. Friedland, on the brief).

R.L.S., Jr., respondent pro se.

PER CURIAM

---

[1] We use initials and a pseudonym to protect the minor's privacy. See R. 1:38-3(d).

Plaintiff appeals an April 5, 2024 Family Part order that did not designate a parent of primary residence (PPR) for her almost five-year-old daughter, M.S. (Mary) and implemented a 2-2-3 parenting plan.[2] She argues the court erred in awarding both parties equal parenting time and refusing to designate her as the PPR. After reviewing the record, the parties' arguments, and the governing legal principles, we affirm the court's order regarding parenting time but reverse and remand for the court to designate a PPR.

I.

On July 21, 2022, plaintiff filed a complaint seeking primary physical custody of Mary and a parenting schedule limiting defendant father's custody of Mary to alternating weekends. Defendant counterclaimed seeking primary physical custody, an alternating holiday schedule, and child support.[3]

On January 5, 2023, the trial court entered a consent order, in pertinent part, stipulating that the parties had joint legal custody of Mary and scheduling a hearing to resolve residential custody and the parenting schedule. In the

---

[2] The 2-2-3 parenting plan called for defendant's parenting time every Monday and Tuesday; plaintiff's parenting time every Wednesday and Thursday; and for the parties to alternate parenting time on weekends from Friday through Sunday.

[3] Defendant's other demands are not at issue here and will not be discussed.

A-0358-23

meantime, the order stated that: (1) both parties have a "right of first refusal," meaning if one party is unable to watch Mary for more than four hours during their parenting time, then the other parent can watch her; (2) the parties must agree to an alternating holiday and vacation schedule for watching Mary; and (3) Mary must remain in her current daycare while the parties continue to reside in the same household.

A plenary hearing was held over three days in April 2023 and July 2023 to determine parenting time, child support, physical custody, and counsel fees. Between the hearing dates, on June 20, the trial court entered an interim parenting time order in response to the parties' selling their jointly owned home in Flanders. The trial court ordered a 2-2-3 parenting schedule, with neither party being designated the PPR. Only the parties testified at the hearing.

Plaintiff testified that because the parties' seven-year relationship ended and they no longer lived together, she wanted primary custody of Mary with defendant having parenting time on alternate weekends because she did not believe he could devote the time needed to care for their daughter daily. She stated that when they lived together she provided ninety percent of Mary's daily care when Mary was not in daycare. While defendant would ordinarily drive Mary to daycare in the morning—a ten-minute drive from their home—plaintiff

3

would pick her up after getting off work around 4:50 p.m. or 5:00 p.m. Once home, plaintiff would bathe Mary, make her dinner, read to her, and prepare her for bed.

Because the parties were selling their jointly owned home, plaintiff planned to buy another house, but in the interim she would rent a three-bedroom apartment in Wharton. She earned $129,398 a year, plus a bonus. On cross-examination, plaintiff testified that her plans fell through, and she instead moved to an apartment in Somerville. She remarked that she only became aware defendant purchased a home in Newton due to his discovery response. She approximated that their respective new residences are an hour's drive apart. Thus, she felt it was practical to enroll Mary in a new daycare about fifteen minutes away from her Somerville apartment.

Finally, as to the parties' relationship, plaintiff acknowledged their communication is confined primarily to "minimal" texts and emails. She also alleged domestic abuse, involving "harassing behavior," but chose not to report the incidents to law enforcement because "[she] was afraid of the effects that it would have on [defendant's] life." Despite the ending of their relationship, she felt they could make decisions that were in Mary's best interests. For example,

4

they agreed on Mary's vaccinations, pediatrician visits, and addressing her night terrors.

Defendant testified he was formerly engaged to plaintiff. While he initially requested primary custody of Mary, defendant now seeks equal parenting time for Mary's benefit. Until about a week before the sale of their home, he, plaintiff and Mary lived together.

Defendant stated he and plaintiff had a "division of labor . . . to make sure [Mary's] needs were met." In the morning, plaintiff would wake up Mary, but he would prepare her breakfast, occasionally help her get ready, and drive her to daycare. Defendant attended Mary's daycare functions—except one—and was familiar with her teachers and the staff. He recalled routinely spending quality time with Mary, such as playing with slime and Play-Doh together, in addition to coloring and reading. Defendant testified that he works as an insurance manager and his employer "[is] very lenient and . . . let[s] us do what we need to do for our kids." His 2023 annual salary was $125,000, not including bonuses.

Defendant also has a teenage son, who lives with his mother in Florida. He testified that Mary and her half-brother enjoy spending time together.

A-0358-23

Concerning disciplining their daughter, defendant said he and plaintiff are on the same page and "try to be super patient with her."

Defendant testified that in March 2023, he bought a three-bedroom home in Newton, approximately eighteen miles away from the parties' former home and less than thirty minutes away from Mary's original daycare. However, Mary's new daycare is an hour and twenty minutes away from his new home. There, Mary has her own bedroom, as does his son for his temporary visits. He said he bought furniture to replicate their previous home, painted a wall pink at Mary's request, and explained that his home has a big backyard, is located on a quiet street, and is in a kid-friendly neighborhood where kids play on the street.

Like plaintiff, defendant testified that even after they separated, efforts were made to co-parent and maintain normalcy for Mary. For example, he stated that he shares a Google Calendar with plaintiff to coordinate Mary's activities and appointments, as well as utilizing Facetime for both parties to say goodnight to her.

On July 31, 2023, the trial court entered a written order accompanied by a written decision granting equal parenting time for the parties without designating either party as the PPR and ordering them to follow a 2-2-3 parenting plan. The court stressed that both parties were credible. Yet, it "[did]

6

not find that [] [p]laintiff was responsible for [ninety percent] of [Mary's] care like she testified and believes this figure to be an exaggeration given the shared living arrangement, [] [defendant's] morning routine, and the Saturdays spent with [] [d]efendant's family." The court's ruling turned on its determination of Mary's "best interests" based on its weighing of the fourteen-factor test in N.J.S.A. 9:2-4(c). V.C. v. M.J.B., 163 N.J. 200, 227-28 (2000).

Based on the record, the court determined most of the factors were in equipoise. They were: factor one — ability to communicate and agree about Mary; factor two — willingness to participate in parenting time and physical custody; factor three — strong relationship with Mary and her siblings; factor five — ensuring Mary's safety from physical abuse and lack of physical abuse against each other; factor seven — fulfilling Mary's needs; factor eight — stable home environment; factor ten — fitness as parents; factor thirteen — employment responsibilities; and factor fourteen — share only three-year-old Mary. The court found following factors did not apply: factor four — history of domestic violence;[4] factor six — Mary's preference for either parent due to

---

[4] The trial court found no merit to plaintiff's allegations of defendant's "harassing behavior," noting they were unsubstantiated and lacked credibility given the absence of a police report, initiation of a temporary restraining order, or complaint filed with the Division of Child Protection and Permanency.

her inability to reason given her young age; and factor nine — the continuity and quality of Mary's education, because of her age. See N.J.S.A. 9:2-4(c). As to factor eleven, the court recognized that the parties live about forty miles apart, amounting to approximately a one-hour drive without traffic. See N.J.S.A. 9:2-4(c). And lastly, the court found only one factor weighed in favor of either party, in this case, plaintiff: factor twelve — plaintiff spent more quality time with Mary on a daily basis by getting her dressed, prepared for daycare, retrieving her from daycare, making dinner, and getting her ready for bed even though defendant spent some quality time with Mary as well. See N.J.S.A. 9:2-4(c).

Considering these factors, the court determined Mary's best interests were served by her parents sharing custody. The court held "that each parent should be equally involved in the day-to-day care of [Mary,] especially at this developing stage in her life. The 2-2-3 parenting plan allows [Mary] to see [them] throughout the week while the 5-day maximum schedule ensures that [Mary] is not always in the car traveling between residences."

The court denied both parties' respective requests to be designated the PPR. The court recognized the following factors are relevant to deciding PPR status:

the tasks performed by the primary caretaker of the children of divorce; the necessity that such primary caretaker receive most of the secondary caretaker's child support; and the necessity that such primary caretaker have the autonomy to decide how that child support ordered by the court is to be disbursed to provide for the basic needs of the children.

[Pascale v. Pascale, 140 N.J. 583, 612 (1995).]

The court reasoned that neither party should be the PPR because they both were involved in Mary's meal preparation, daycare arrangements, and daily needs. The court also emphasized that up until July 2023 they were living together.

Plaintiff appeals arguing:

POINT I

THE COURT FAILED TO PROVIDE ADEQUATE WEIGHT TO THE RELEVANT STATUTORY FACTORS PURSUANT TO N.J.S.A 9:2-4(c) AND FAILED TO MAKE ADEQUATE FINDINGS OF FACT WHEN IT AWARDED THE PARTIES EQUAL PARENTING TIME.

POINT II

THE COURT FAILED TO MAKE ADEQUATE FINDINGS OF FACT TO SUPPORT ITS CONCLUSION THAT NEITHER PARTY SHOULD BE DESIGNATED A PARENT OF PRIMARY RESIDENCE.

POINT III

THE COURT'S DECISION TO AWARD EQUAL

PARENTING TIME AND TO NOT DESIGNATE A PARENT OF PRIMARY RESIDENCE ONLY SERVES TO FORCE FUTURE LITIGATION.

II.

Our review of a family court's findings in a custody dispute is limited given they are "acutely fact-sensitive." Beck v. Beck, 86 N.J. 480, 490 (1981). The findings are reviewed for an abuse of discretion "[b]ecause of the family courts' special . . . expertise in family matters." N.J. Div. of Youth & Fam. Servs. v. W.F., 434 N.J. Super. 288, 294 (App. Div. 2014) (alterations in original) (quoting N.J. Div. of Youth & Fam. Servs. v. G.M., 198 N.J. 382, 396 (2009)). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). The family court abuses its discretion when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Imm. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

It is well-established that custody disputes should be resolved in the best interests of the child. M.J.B., 163 N.J. at 227-28. The primary considerations are the child's "safety, happiness, physical, mental and moral welfare." Fantony

v. Fantony, 21 N.J. 525, 536 (1956); see also P.T. v. M.S., 325 N.J. Super. 193, 215 (App. Div. 1999).  As noted above, the fourteen factors set forth in N.J.S.A. 9:2-4(c) are evaluated to assess what custody arrangement is in the best interests of the child.  With these principles in mind, courts are granted "wide latitude to fashion creative remedies in matrimonial custody cases."  Beck, 86 N.J. at 485.

A trial court's designation of a specific parent as the PPR also entails a best interest of the child inquiry.  Bisbing v. Bisbing, 230 N.J. 309, 335 (2017). Our Supreme Court has clarified, "[t]hat standard comports with our custody statute, in which the Legislature unequivocally declared that the rights of parents are to be equally respected in custody determinations and stated that custody arrangements must serve the best interests of the child."  Ibid. (citing N.J.S.A. 9:2-4).  Moreover, "[a] number of the statutory best interests factors will be directly relevant in typical relocation decisions and additional factors not set forth in the statute may also be considered in a given case."  Ibid.; see, e.g., Benisch v. Benisch, 347 N.J. Super. 393, 399, 401 (App. Div. 2002) (remanding to the trial court because "while there may be bona fide reasons why plaintiff should be designated as PPR . . . , those reasons are not apparent from the record submitted to us, nor from the court's otherwise carefully constructed, comprehensive opinion").

III.

In reaching our decision, we need not re-evaluate each best interest of the child factor detailed in the trial court's written decision.  We conclude the trial court thoroughly analyzed the statutory factors in making its custody decision, but we part company with its decision not to designate a PPR.  Given the distance between the parties' residences and the practical implications concerning Mary's forthcoming school enrollment, a PPR is warranted.

We do not evaluate plaintiff's contentions before us as they are outcome-determinative whether the trial court erred by not designating a PPR.  We, however, share her perspective that the trial court neglected to properly consider the significance of the parties' residential distance and the impact on Mary's best interests.  She argues that a PPR designation is appropriate because "the parties will be residing in different counties . . . [with] different school districts" that are "more than an hour driving distance" apart from one another.  We agree.

Mary will turn five this summer and will be enrolled in school this upcoming school year.  The parties live more than an hour apart in different counties, which under the current parenting plan would require one parent to drive about an hour each way to retrieve Mary depending on her school's location.  Realistically, the failure to name a PPR only invites future litigation

12

and a venue dispute if the parties are unable to reach an amicable decision. Considering Mary's best interests for this new step in her childhood, the trial court should consider all relevant factors and designate a PPR.

Accordingly, we vacate the trial court's order not to designate a PPR and remand the matter for a plenary hearing to be held within sixty days of this decision to determine who shall serve as the PPR. We express no view on the outcome of that proceeding.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

13 A-0358-23